IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUNE R. LALONE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 15-cv-1160-JPG-CJP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant.[1] ) | |

**MEMORANDUM and ORDER**

**GILBERT, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff June R. Lalone seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for benefits in July 2013 alleging disability beginning on February 1, 2013. After holding an evidentiary hearing, ALJ Stewart T. Janney denied the application in a written decision dated April 10, 2015. (Tr. 19-32.) The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1.) Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issue Raised by Plaintiff**

Plaintiff raises the following point:

1. The ALJ erred in giving too little weight to the opinion of her treating physician, Dr. Todd Smith, and in giving too much weight to the opinions of the reviewing state agency consultants.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See* https://www.ssa.gov/agency/commissioner.html (visited Feb. 7, 2017). She is automatically substituted as defendant in this case. *See* Fed. R. Civ. P. 25(d); 42 U.S.C. § 405(g).

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity ("RFC") and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008); *accord Weatherbee v. Astrue*, 649 F.3d 565,

---

[2] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

568-69 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984); *see also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. §405(g). Thus, this Court must determine not whether Ms. Lalone was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law

3

were made. *See Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, *i.e.*, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Janney followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date, and that she was insured for DIB through December 31, 2014.[3] He found that plaintiff had severe impairments of asthma, chronic obstructive pulmonary disease, sinus disease, nasal septal deviation, and right carpal tunnel syndrome, none of which meet or equal a listed impairment.

The ALJ found that Ms. Lalone had the RFC to perform work at the light exertional level, limited to only occasional handling of objects and fingering with both upper extremities, and she should avoid concentrated exposure to fumes, odors, dust, gasses, and areas of poor ventilation. She had no past relevant work. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because she was able to do jobs which exist in significant numbers in the

---

[3] The date last insured is relevant only to the claim for DIB.

local and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.

**1.    Agency Forms**

Plaintiff was born in 1970 and was 42 years old on the alleged onset date of February 1, 2013.  (Tr. 234.)   She had worked "off and on" in fast food restaurants and as a CNA in a nursing home.  (Tr. 237.)

Plaintiff said she was unable to work because of asthma, right hip damage from a car accident in 2011, anxiety, carpal tunnel on the right, migraines, insomnia, and profuse sweating and shortness of breath on exertion.   She was 5'7" tall and weighed 155 pounds.  (Tr. 246.)

**2.    Evidentiary Hearing**

Ms. Lalone was represented by an attorney at the evidentiary hearing on March 16, 2015. (Tr. 41.)

Plaintiff had a medical card and had not had to forego any treatment or medicine because of inability to afford the co-pay.  She lived with her 20-year-old daughter.  (Tr. 45-46.)   She said she could not work a full time job because of depression, anxiety, panic attacks, back pain, and wrist pain.  Her depression was so bad that sometimes she could not function.  She took Lorazepam for anxiety and hydrocodone for pain.  (Tr. 51-53.)  She had migraine headaches three or four days a month that lasted all day.  She had pain in her right elbow and numbness in her hand.  (Tr. 57-58.)

Plaintiff had carpal tunnel surgery in early 2013.  She tried to go back to work, but the

numbness and tingling came back.   (Tr. 60.)

A vocational expert (VE) also testified.   The ALJ asked the VE a hypothetical question which comported with the ultimate RFC assessment.   The VE testified that there was a "narrow range" of work this person could do.   She identified the jobs of usher and school bus monitor.  (Tr. 70-71.)

If, in addition to the other limitations already listed, she were also limited to only occasional contact with the public, there would be no jobs that she could do.   (Tr. 72.)

### 3. Medical Treatment

Plaintiff's primary care physician was Dr. Todd Smith.   She began seeing him in September 2012 for complaints of right hip pain and asthma.   (Tr. 588.)   She saw him, or another provider in his group (Murphysboro Health Center), almost monthly.

In October 2012, she saw a nurse in Dr. Smith's office for right hip pain and anxiety.   She was requesting pain medication.   The nurse noted that she had been prescribed 190 narcotics pills in the last 5 weeks, and diagnosed narcotic dependence.   She gave plaintiff a prescription for 20 Norco (acetaminophen and hydrocodone) pills "until Dr. Smith is back."   (Tr. 583.)

Dr. Smith prescribed Norco for low back pain and Ativan for anxiety/insomnia in January 2013.   (Tr. 398.)   He also prescribed medications for asthma.   (Tr. 397.)

She complained of right hand pain, numbness and tingling in December 2012.   (Tr. 581-582.)   In January 2013, an EMG/nerve conduction study showed moderately severe right carpal tunnel syndrome and moderately severe right ulnar neuropathy at the elbow (cubital tunnel syndrome.)   (Tr. 399-400.)   Dr. Smith referred her to Dr. Young.   (Tr. 397.)

Dr. Steven Young performed a right carpal tunnel release and right ulnar nerve transposition in March 2013.   (Tr. 497.)   Two weeks later, her numbness and tingling were

resolved.  (Tr. 499.)  In September 2013, she reported that she had tried going back to work and had experienced pain and numbness.  On exam, she had diffuse tenderness of the right wrist and elbow, but full range of motion and no swelling.  (Tr. 506.)  In October 2013, Dr. Young noted that her biggest issue was pain.  On exam, sensation to light touch was intact.  He did not find any triggering or clawing of the fingers.  He stated that she was "doing much worse than I would have anticipated."  She did not want more surgery, so he recommended pain management.  (Tr. 508.)  The last visit was in January 2014.  Dr. Young noted some catching in the thumb, index finger and long finger.  There was no swelling.  He again recommended that she go to pain management.  She did not want injections or trigger finger release.  He released her from his care as there was nothing more he could do.  (Tr. 529-30.)

     Ms. Lalone was seen at Dr. Smith's office a total of fifteen times between January 2013 and her last visit on August 15, 2014.  (Tr. 364-404, 532-88, 780-86.)  On a number of visits, the notes regarding the musculoskeletal exam indicate that she had normal range of motion, muscle strength and stability in all extremities, "with no pain on inspection."  (Tr. 380, 385, 390.)  On a number of other visits, there were no observations at all recorded regarding a musculoskeletal exam.  (Tr. 373, 394, 782, 785.)  In June 2014, her back pain was said to be controlled with pain medication.  Her anxiety symptoms were fairly controlled, but she requested more Lorazepam for a month as her daughter was moving away.  (Tr. 784.)  At the last visit, she complained to Dr. Smith of anxiety, right hand swelling, and pain in her low back, right hip and right arm.  She said she had been helping her mother clear out the yard, moving bricks and logs, and it made her back worse.  She had run out of Norco and was requesting a prescription for Ultram (tramadol) to tide her over until her Norco prescription was due to be refilled.  On exam, the only positive finding was a systolic murmur.  Dr. Smith wrote, "Ultram script given to patient this once.  From now on

patient has to make pain meds last the full month."  (Tr. 781-83.)

For reasons that are not explained in the record, Ms. Lalone established care with Dr. Swarna Matsa as a primary care provider on May 1, 2014.  (Tr. 774-78.)  She was, of course, still seeing Dr. Smith at that time.  Plaintiff complained to Dr. Matsa of asthma, anxiety and back pain.  On exam, her lungs were clear to auscultation and her respiratory effort was normal.  The musculoskeletal exam showed normal range of motion, muscle strength and stability in all extremities, with no pain on inspection.  The psychiatric exam showed she was oriented, had normal insight and judgment, and her mood and affect were appropriate.  She was wheezing, so she was given a sample of Dulera.[4]  Dr. Matsa noted that she was on a "very high" dosage of narcotics for her chronic back pain and counseled her regarding narcotic addiction.  She also recommended that she wean off of Lorazepam because of its addiction potential and take Paxil instead.  (Tr. 774-78.)

Plaintiff saw Dr. Smith on June 26, 2014, and obtained a refill of her Norco prescription as well as a refill of Lorazepam at an increased dosage.  (Tr. 786.)

An emergency room record from July 2014 indicates that plaintiff was running a daycare center.  (Tr. 839-40.)

On September 11, 2014, Dr. Matsa noted that plaintiff had stopped taking Paxil for her anxiety because she could not tolerate it.  She prescribed Zoloft.  She noted right hip pain on exam, but also noted that her pain level did not require narcotics.  She did not prescribe Norco, but did give her " a few pills of tramadol" because she said she had "severe pain."  She recommended that plaintiff see an orthopedic surgeon for steroid injections for her carpal tunnel syndrome.  (Tr. 769-73.)

---

[4]  Dulera is an inhaled asthma medicine.  http://www.dulera.com/mometasone_formoterol/dulera/index.jspm (visited Mar. 2, 2017).

In February 2015, an EMG/nerve conduction study again showed moderately severe right carpal tunnel syndrome and moderately severe right ulnar neuropathy at the elbow but no cervical radiculopathy. (Tr. 1016-17.)

### 4. Dr. Smith's opinion

Dr. Todd Smith completed a Residual Functional Capacity Questionnaire at the request of plaintiff's counsel in October 2014. (Tr. 793-94.) He indicated that Ms. Lalone had diagnoses of asthma, low back/right hip pain, pelvic pain, anxiety, insomnia, right carpal tunnel surgery and right ulnar nerve entrapment. He said that she could sit for only 15 minutes at a time and stand/walk for only 20 minutes at a time. She could sit for a total of 2 out of 8 hours, and could stand/walk for a total of 2 out of 8 hours. She could never use her right hand to grasp, turn or twist objects, or to do fine manipulation. She could never use her right arm for reaching. She had no limitations in using her left arm or hand. She was likely to miss 4 our more days of work a month. Dr. Smith concluded that she was not physically capable of working an 8 hour day, 5 days a week.

Dr. Smith submitted an identical questionnaire in January 2015. (Tr. 988-89.)

### 5. State Agency Consultants' RFC Assessments

In October 2013, state agency consultant Lenore Gonzalez, M.D., assessed plaintiff's physical RFC based on a review of the record. She opined that plaintiff could lift/carry and push/pull up to 20 pounds occasionally; could sit for a total of 6 out of 8 hours; could stand/walk for a total of 6 out of 8 six hours; and needed to avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. (Tr. 80-81.) In June 2014, Julio Pardo, M.D., agreed with Dr. Gonzalez but added a limitation to only occasional handling and fingering with both hands. (Tr. 103-05.)

## Analysis

ALJ Janney rejected Dr. Smith's opinion as to plaintiff's RFC because it was "grossly inconsistent" with the record as a whole, and those inconsistencies were not explained based on medical evidence. He pointed out that Dr. Smith did not explain why, based on medical evidence, plaintiff would miss 4 or more days of work a month or why she was not capable of working full-time. (Tr. 30.)

The ALJ is required to consider a number of factors in weighing a treating doctor's opinion. The applicable regulation refers to a treating healthcare provider as a "treating source." The applicable regulation, 20 C.F.R. § 404.1527(c)(2) provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. *If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.*

(emphasis added).

Obviously, the ALJ is not required to accept a treating doctor's opinion; "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (internal citation omitted). Rather, a treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical findings and is not inconsistent with other substantial evidence in the record. *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

It is the function of the ALJ to weigh the medical evidence, applying the factors set forth in

§ 404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions. In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010).

The ALJ must be mindful that the treating doctor has the advantage of having spent more time with the plaintiff but, at the same time, he or she may "bend over backwards" to help a patient obtain benefits. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006); *see also Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patients' regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

When considered against this backdrop, the Court finds that the ALJ did not err in rejecting Dr. Smith's opinion.

In his extensive review of the medical evidence, ALJ Janney explained that the medical evidence as a whole did not support plaintiff's claim of severe mental and physical limitations. He noted repeated physical exams which yielded few or no abnormal findings. He noted that, by September 2014, Dr. Matsa (erroneously referred to as Dr. Swama) believed that plaintiff did not need narcotic pain medication for her pain level. He acknowledged that the February 2015 EMG/ nerve conduction study showed moderately severe carpal tunnel syndrome and ulnar neuropathy, but also pointed out that plaintiff had elected not to pursue additional surgery or injections.

Plaintiff's argument relies mainly on her own subjective complaints. However, the ALJ concluded that plaintiff was not entirely credible and gave a number of specific reasons for that conclusion. Plaintiff has not challenged the credibility finding, which greatly undermines her

11

argument regarding Dr. Smith's opinion. The only objective evidence she refers to is the February 2015 EMG/nerve conduction study. The ALJ did not ignore that study; he acknowledged the results, but also considered the findings on physical exams indicating that plaintiff's right hand and arm problems were not as severe as Dr. Smith indicated. (Tr. 29-30.) Further, he considered notations in the medical records suggesting that plaintiff was able to do much more than Dr. Smith's opinions would suggest. (Tr. 27.)

Other than her own subjective complaints and the 2015 EMG/nerve conduction study, plaintiff points to no specific evidence that would support Dr. Smith's opinion. She points to nothing at all that would support the extreme limitations in ability to sit, stand and walk, or his opinion that she would miss 4 or more days of work a month. An ALJ may properly discount a treating doctor's medical opinion where that opinion is based on the patient's subjective complaints. *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016). And, while she argues that Dr. Smith treated her for anxiety and depression, she has not argued that the ALJ should have imposed any particular mental limitation.

The Court notes the recent case of *Brown v. Colvin*, 845 F.3d 247 (7th Cir. 2016), decided after the briefs were filed here. In *Brown*, the Seventh Circuit held that the ALJ erred in rejecting a treating doctor's opinion where the doctor's records did not fully corroborate his opinions, but did not contradict them either. *Id.* at 253. The present case is distinguishable in several respects. First, Dr. Smith's repeated normal musculoskeletal exams contradict his opinion that plaintiff is severely limited in her ability to sit, stand, walk and use her hands and arms. Secondly, Dr. Matsa's opinion that plaintiff's pain level did not require narcotics contradicted Dr. Smith's opinion. Further, in *Brown*, the ALJ misrepresented the plaintiff's daily activities. *Id.* at 253-54. Plaintiff makes no such argument here.

Plaintiff argues that the ALJ erred in giving too much weight to the opinions of the state agency reviewers.  To the extent that she is suggesting that the opinion of a nonexamining doctor cannot outweigh treating doctor's opinion, she is incorrect.  The applicable regulation provides that a treating or examining doctor's opinion is *generally* given more weight.  20 C.F.R. § 404.1457(c)(1) & (2).  In view of the ALJ's duty to weigh the medical opinions, there is obviously no *per se* rule favoring a treating doctor's opinion over that of a nonexamining doctor. She also argues that it was error to credit the reviewers' opinions over Dr. Smith's because the reviewers did not benefit from Dr. Smith's opinion or the 2015 EMG/nerve conduction study. This argument ignores the fact that the ALJ properly found that Dr. Smith's opinion was not supported by the rest of the medical evidence; as such, it would not have "benefitted" the reviewers to have access to it.  Furthermore, both of Dr. Smith's identical reports were prepared *before* the EMG/nerve conduction study was done in February 2015.  There is no evidence that Dr. Smith saw plaintiff after August 2014 or that he reviewed any of her later medical records.

An ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of another physician, internally inconsistent, or inconsistent with other evidence in the record.  *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).  Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax."  *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).  The Court finds that ALJ Janney more than met the minimal articulation standard here.

This is not a case in which the ALJ failed to discuss evidence favorable to the plaintiff or misconstrued the medical evidence.  Rather, after reviewing the medical evidence in detail, the

ALJ concluded that Dr. Smith's opinion was contrary to the rest of the evidence, including other medical evidence and plaintiff's activities. Plaintiff has not identified a sufficient reason to overturn that conclusion.

Even if reasonable minds could differ as to whether Ms. Lalone was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder*, 529 F.3d at 413. ALJ Janney' decision is supported by substantial evidence and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Janney committed no errors of law and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying June R. Lalone's application for disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of the defendant.

**IT IS SO ORDERED.**
**DATE:   March 16, 2017**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **UNITED STATES DISTRICT JUDGE**